UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

WILLIAM J. LUNDREGAN,
Executor of the Estate
of Thomas A. Smith,

          Appellant            BANKRUPTCY APPEAL
                                   CIVIL ACTION
vs.                                  No. 05-CV-11557

LUKE STEVENS and JOSEPH M.
RYAN, Trustee of Mt. Vernon
Realty Trust,

          Appellees

_____


**BRIEF OF APPELLANT**

## Table of Contents

Table of Contents ................................ i

Table of Cases and Authorities ................... ii

Statement Of Basis Of Appellate Jurisdiction ..... 1

Statement Of Case ................................ 3

Statement Of Issues Presented And Applicable
Standard Of Review ............................... 14

Argument ......................................... 17

Conclusion ....................................... 30

**Table of Cases**

*C.B. Hayes v. Commissioner of Internal Revenue*, 17 B.T.A. 86 (1929)......................................... 18

*Citizens Bank of Elizabethton, Tennessee v. Ken-Penn Amusement, Inc.*, 798 F.Supp. 268 (W.D.Pa. 1992)..... 22

*Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26 (1st.Cir.1994) ..................................... 16

*Grose v. Bow Lanes, Inc.,* 661 N.E.2d 1220(Ind.App. 1996) ..................................................... 17

*Hasbro, Inc. v. Serafino,* 37 F.Supp.2d 94(D.Mass. 1999) ..................................................... 27

*In re Boston Regional Medical Center, Inc.*, Civil Action No. 03-12215-RGS (D.Mass. August 9, 2004)........... 16

*In re Cadkey Corp.*, Bankruptcy Appeal No. 04-40045-NMG (D.Mass. March 31, 2005)........................... 16

*In re Chestnut Hill Mortgage Corp.*, 158 B.R. 547(D.Mass.1993) .................................... 16

*In Re Estate of Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995)

*In re First New England Dental Centers, Inc.*, Civil Action No. 02-12195-WGY (D.Mass. March 31, 2003)........... 16

*In re LaRoche*, 969 F.2d 1299(1st. Cir. 1992) ........ 16

*Insurance Co. v. Dutcher*, 95 U.S. 269, 273 (1877)... 17

*Iscovitz v. Filderman,* 334 Pa. 585, 6 A.2d 270 (1939) ..................................................... 19

*Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248(1st Cir. 1991).......................... 28

*Milbauer v. Milbauer*, 54 Conn.App. 304, 733 A.2d 907 (1999) ..................................................... 18, 20

*Millett v. Temple,* 280 Mass. 543(1932)............. 26

*New England Merchants National Bank v. Morin,* 16
Mass.App.Ct. 104, 449 N.E.2d 682 (1983)............. 27

*Palmer v. Murphy*, 42 Mass. App. Ct. 334, 677 N.E.2d 247
(1997)........................................... 27, 28

*Pitti v. Pocono Business Furniture*, 859 A.2d 523 (Pa.Commw.
2004) .......................................... 19, 20

*Pittsfield & North Adams R.R. v. Boston & Albany R.R.* 260
Mass. 390, 157 N.E. 611 (1927)..................... 17

*S.E.C. v. Better Life Club of America, Inc.,* 995 F.Supp.
167(D.C. 1998).................................... 18

*Silva v. Pereira*, 1 Mass.App.Ct. 368, 298 N.E.2d 701 (1973)
................................................ 18

*United States v. Klimek*, 952 F.Supp. 1100 (E.D.Pa. 1997)
................................................ 21

*W.F. Young, Inc. v. Commissioner of Internal Revenue, 120
F.2d 159*(1st Cir. 1941) .......................... 18

**Table of Authorities**

Gift Rather Than Loan, 39 POF2d 733 .............. 17

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————

WILLIAM J. LUNDREGAN,
Executor of the Estate
of Thomas A. Smith,

         Appellant

vs.

LUKE STEVENS and JOSEPH M.
RYAN, Trustee of Mt. Vernon
Realty Trust,

         Appellees

BANKRUPTCY APPEAL
CIVIL ACTION
No. 05-CV-11557

—————————————————

### BRIEF OF APPELLANT

### INTRODUCTION AND
### BASIS OF APPELLATE JURISDICTION

This appeal arises from the Judgment entered by the Bankruptcy Court (Robert Somma, United States Bankruptcy Judge) on June 2, 2005 denying the Appellant's complaint seeking to avoid a fraudulent conveyance and overruling the Appellant's objections to the Debtor's discharge. The underlying Adversary Proceeding and Complaint were ones arising out of Debtor's Chapter 7 proceeding, case number 99-18437-CJK. The Bankruptcy Court's jurisdiction of the adversary proceeding arose pursuant to 28 U.S.C. Section 1334 and 11 U.S.C. Section 727. The adversary proceeding is a core proceeding within the terms of 28 U.S.C. Section 157(b)(2)(J). This appeal arises pursuant to

Appellant's election under 28 U.S.C. § 158(c)(1) to have this appeal heard by the District Court.

Appellant, a Judgment Creditor, brought the underlying adversary proceeding to object to the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(2)(A) on the grounds that on or about May 27, 1997, and continuing thereafter, and including the period of time within one year before the filing date of these Chapter 7 proceedings and continuing after the date of the filing of his bankruptcy petition, the Debtor, Luke Stevens, with the intent to hinder, delay and/or defraud his creditors, participated and directed a scheme and plan to transfer, remove and conceal his ownership interests in certain real property, said real property being property of the bankruptcy estate, and more commonly described as Debtor's residence at 3 Crescent Court, Beverly, Massachusetts. Additionally, the Appellant asserts that the Debtor's discharge should have been denied pursuant to 11 U.S.C. § 727(a)(4) on the grounds that the Debtor knowingly and fraudulently made false oaths in his bankruptcy schedules in an attempt to conceal the holder of the challenged mortgage (his mother) and in claiming in Schedule J – *Current Expenditures of Debtor* – that he was making monthly mortgage payments on the mortgage when in fact no payments were ever made.

The Debtor filed his underlying Chapter 7 proceeding as a **No Asset** case. However, the Plaintiff says that if the Court disregards or avoids a mortgage on the Debtor's real estate, then

in fact there will be sufficient assets in the estate to satisfy
the Plaintiff's Judgment.  In addition, the Debtor's Statement of
Current Income and Statement of Current Expenditures (Schedules I
and J) reveal no disposable income.  However, since Debtor has
never made a $900.00 monthly mortgage payment as claimed, had his
true expenses been scheduled he would have revealed sufficient
disposable income to pay his debts in a reorganization plan under
Chapter 13.

### STATEMENT OF THE CASE

### Parties

Appellant, William J. Lundregan, is a creditor of the
Defendant in his Chapter 7 proceeding. Appellant is the duly
appointed Executor of the Estate of Thomas A. Smith, by Order of
the Essex County Probate Court, Docket Number 92-1782-EP1.
Appellant is a Judgment Creditor of Defendant by virtue of the
Judgment entered in litigation pending upon the commencement of
these Chapter 7 proceedings and styled *William J. Lundregan,
Executor of the Estate of Thomas A. Smith v. Luke Stevens*, Essex
Superior Court, Civil Action number 97-1176.

Appellee, Luke Stevens, in the Debtor in Chapter 7
proceeding, case number 99-18437-CJK.

Appellee, Joseph M. Ryan, Trustee of Mount Vernon Realty
Trust, is an individual and as Trustee holds a mortgage claim
against property of the bankruptcy estate, said mortgage claim

*3*

being alleged to be a fraudulent conveyance as set forth herein below.

### Pre-petition Events

Appellant, William Lundregan has been a practicing attorney since 1967. In 1996 he was appointed executor of the estate of Thomas A. Smith. The principal assets of the Smith estate were two parcels of rental property located in Salem, Massachusetts. As Executor, Attorney Lundregan undertook to market and sell these properties. (Trial transcript pages 11-12). On or about December 12, 1996 the Appellee Luke Stevens entered into a contract to purchase the properties from the Appellant. (Trial transcript, pages 12-14)

Luke Stevens signed an offer and deposited One Thousand ($1,000.00) Dollars to bind the deal. The purchase price for the properties was Two Hundred Forty-Five Thousand ($245,000.00) Dollars. The offer was accepted by Mr. Lundregan and a contract for the purchase and sale was formed between the parties. (Trial transcript, pages 13-14)

Subsequently, Luke Stevens reneged on the contract, and was sued by Lundregan for specific performance and other relief.[1] (Trail transcript, page 14)

---

[1] **Trial Exhibit 1:** docket sheet in the matter of *William J. Lundregan, Executor of the Estate of Thomas A. Smith v. Luke Stevens*, Essex Superior Court, Civil Action number 97-1176.

Lundregan subsequently sold the properties to another buyer for Two Hundred Ten Thousand ($210,000.00) Dollars -- a loss of Thirty-Five Thousand ($35,000.00) Dollars from the Stevens contract.[2]

Meanwhile, Luke Stevens set about purchasing other property and arranging with his mother's attorney to shield it from his creditors. Luke Stevens' mother is Margaret E. Stevens. Mrs. Stevens is the beneficiary of a trust established by her deceased husband, the Stevens Family Trust. In addition, Mrs. Stevens established her own revocable Trust, the Margaret E. Stevens Trust 1981. Margaret E. Stevens is the sole life beneficiary of the trust that bears her name. After she dies, her three children become the beneficiaries.

The Eastern Savings Bank, through its trust department, manages both trusts. The bank employees managing the trusts for Mrs. Stevens were Mr. Gary Peterson and, after his retirement, Mr. Tim Madigan. Finally, the transactions at issue involve a third trust, the Mount Vernon Realty Trust. The Mount Vernon Realty Trust was created by Mrs. Stevens' attorney, Joseph F. Ryan. Attorney Joseph F. Ryan suggested that his son, Joseph M. Ryan, (also an attorney) serve as the Trustee of the Mount Vernon Realty Trust and Luke Stevens agreed to this suggestion.[3] Attorney Joseph F. Ryan drafted the trust documents and on May

---

[2] **Trial Exhibits 16A and 16B:** Closing Documents.
[3] Trial testimony of Joseph M. Ryan, transcript at page 20.

19, 1997, the son Joseph M. Ryan executed them as Trustee.  The sole beneficiary of the Mount Vernon Realty Trust is the Margaret Stevens Trust 1981.  The Margaret Stevens Trust 1981 was characterized by Mr. Peterson in his trial testimony as a "nominee trust," meaning that Mrs. Stevens controls all actions undertaken by her Trustee.  Mrs. Stevens, through her directions to the bank's trust department, controls all actions undertaken by both the Margaret Stevens Trust 1981 and the Mount Vernon Realty Trust.

Mr. Peterson testified that Margaret Stevens was in complete control of disbursements from her trust. (Trial transcript, page 37)  Mr. Peterson testified that Mrs. Stevens frequently instructed him to disburse money to her son Luke Stevens. (Trial transcript, page 37)  Mr. Peterson further testified that while the Bank's accounting of the trust's disbursements characterized these expenditures as "loans," the bank held no promissory notes for the loans, and in fact the "loans" carried on the bank's books were actually just a long series of disbursements to Luke Stevens.  (Trial transcript, pages 39 - 41)  Mr. Peterson was aware that Mrs. Stevens had directed a series of disbursements be made to her son related to his various attempts to purchase real estate. (Trial transcript, pages 42-43)  Mr. Peterson specifically recalled that he was instructed to have the Margaret Stevens Trust 1981 disburse funds to allow Luke Stevens to purchase a residence located at 3 Crescent Court, Beverly,

Massachusetts.   (Trial transcript, page 44; Trial Exhibit 12)
Mr. Peterson testified that the Margaret Stevens Trust 1981
provided all the funds required to purchase the property at 3
Crescent Court, Beverly, MA for Luke Stevens. (Trial transcript,
pages 44-45)   This testimony is confirmed by the closing
Settlement Statement disclosing the lender as *Eastern Bank and
Trust, Trustee Under Instrument of Margaret Stevens*.   (Trial
Exhibit 7).   Mr. Peterson further testified that as Trustee for
the Margaret Stevens Trust 1981 he never provided any funds to
the Mount Vernon Realty Trust. (Trial transcript, page 46)   Thus
Mr. Peterson's testimony is consistent with that of Attorney
Joseph M. Ryan (the son), Trustee of the Mount Vernon Realty
Trust that the Mount Vernon Realty Trust did not provide the
funds at closing to purchase the Beverly property.    (Mr.
Peterson's trial testimony, transcript pages 45-46)(Attorney
Joseph M. Ryan's trial testimony, transcript pages 26 and 31)
Finally this method of financing was confirmed by the testimony
of Joseph F. Ryan (the father) who closed the loan that the
lender disclosed on the closing settlement statement was the
Margaret Stevens Trust 1981 and that no funds ever went into the
hands of the Mount Vernon Realty Trust.   (Trial testimony of
Joseph F. Ryan, pages 88-89)

On May 28, 1997, Luke Stevens purchased a single-family home
located at 3 Crescent Court, Beverly, Massachusetts, for the sum
of One Hundred Seventy Thousand ($170,000.00) Dollars. The deed

7

into Debtor was recorded on May 28, 1997 in Book 14129 Page 127, Essex South District Registry of Deeds.[4]   At the closing Luke Stevens executed a $172,000.00 promissory note secured by a mortgage on his home in favor of the Mount Vernon Realty Trust. The note was for a five year term, bearing interest at the minimal rate of four and three-quarters (4.75%) percent, with a balloon payment due on May 28, 2002.  (Trial exhibits 9 and 10) As will be set forth in more detail below, Luke Stevens never made any payments to the Eastern Bank/Margaret Stevens Trust 1981 on this promissory note.  (See, trial testimony of Mr. Gary Peterson at page 47 and trial testimony of Mr. Tim Madigan at page 59)

Attorney Joseph M. Ryan (the son) acknowledged that it was his understanding that the Mount Vernon Realty Trust was created as a vehicle for money to go from the Margaret Stevens Trust (controlled by the mother) to purchase a residence for her son. However, the Trustee acknowledged that he never met with either Margaret Stevens or her son Luke Stevens.  (Trial transcript, pages 22-24).  While the Trustee was aware that the beneficiary of the trust he controlled was another trust – the Margaret E. Stevens Trust – he had never seen a copy of this trust document. (Trial transcript, pages 23-24)  The Trustee testified that the Mount Vernon Realty Trust never opened a bank account, never

---

[4] **Trial Exhibit 7**: HUD Settlement Statement; **Trial Exhibit 8:** Deed.

applied for a taxpayer identification number and *never possessed any funds that could have been loaned to Luke Stevens to purchase his residence*. (Trial transcript, page 26)  The Trustee of the Mount Vernon Realty Trust did not attend the loan closing for Luke Stevens' real estate purchase.  The Trustee admitted that he knew of no evidence that the Mount Vernon Realty Trust actually provided the funds presented at closing to purchase Luke Stevens residence. (Trial transcript, page 31)  The Trustee of the Mount Vernon Realty Trust (an attorney) did not even maintain a file with regards to the trust business.  Attorney Joseph M. Ryan (the Trustee) acknowledged that all business affairs of the Mount Vernon Realty Trust were handled by his father, Joseph F. Ryan. The Trustee admitted that he did not even seen the loan transaction documents from the Luke Stevens closing (the 5/28/97 purchase) until days before his deposition was taken in September of 1999! (Trial transcript, page 28).

While the Trustee eventually came to understand that the only asset of the Mount Vernon Realty Trust was the promissory note due from Luke Stevens, his father instructed him to take no actions to collect on the note.  (Trial transcript, page 30) Pursuant to these instructions the Trustee testified that he never undertook any actions to collect payments due on the note. (Trial transcript, page 30)  The Trustee acknowledged an understanding that the Trustee of Margaret Stevens Trust (Eastern Bank) had instructed that no collections efforts on the mortgage

note be undertaken. (Trial transcript, page 30)  Eventually, as a result of the State Court lawsuit undertaken by Appellant, Attorney Joseph M. Ryan resigned as Trustee of the Mount Vernon Realty Trust *immediately before his deposition was taken* in September of 1999.  (Trial transcript, page 31)  Attorney Ryan acknowledged that he had undertaken no actions as Trustee of the Mount Vernon Realty Trust since 1999.  He further acknowledged that no successor trustee had been appointed to replace him. (Trial transcript, page 32)  In summary, Attorney Joseph M. Ryan admitted that the only actions he had taken as Trustee for the Mount Vernon Realty Trust were the initial execution of the Trust documents and attending his deposition in the State Court action.

The actions of Attorney Joseph M. Ryan as Trustee of the Mount Vernon Realty Trust were pursuant to the directions of Mr. Gary Peterson at the trust department of the Eastern Bank.  Mr. Peterson's every action was directed by Mrs. Stevens.  Mr. Peterson testified that he was aware that a significant asset of the Margaret Stevens Trust 1981 was the $172,000.00 promissory note payable to the Mount Vernon Realty Trust, and through that trust payable to the Margaret Stevens Trust 1981.  Mr. Peterson testified that during his handling of the trust business (until his retirement in June 2002), *no payments* were made by Luke Stevens on the note due to the Mount Vernon Realty Trust.  (Mr. Peterson's trial testimony, page 47).  Mr. Peterson became so concerned about the lack of any payments that in March of 1998,

*10*

ten months after the closing, he wrote to Mrs. Stevens requesting her written instructions confirming that the Bank was to take no actions to collect.   Mrs. Stevens then countersigned the same letter acknowledging that the Bank was to take no actions to collect on the mortgage and promissory note.   (Trial exhibit 13) These instructions were consistent with a long pattern of behavior by Mrs. Stevens instructing the Bank to take no efforts to collect on any of Luke Stevens' notes.

In addition to the $172,000.00 promissory note arising out of the real estate purchase, the Margaret Stevens Trust 1981 also held numerous additional "demand notes" due from Luke Stevens: a so-called $48,576.00 note, another $15,000.00 demand note and a long list of disbursements referred to as loans and totaling approximately $60,000.00.   (These "loans" are itemized in trial exhibit 14)   These long standing "loans" to Luke Stevens were handled just like the $172,000.00 promissory note and mortgage: Luke Stevens never made a single payment on any of the "loans." (Gary Peterson's trial testimony, pages 52-53)   Instead Mr. Peterson received consistent instructions from Mrs. Peterson that the Bank was to take no actions to collect on these obligations. (Gary Peterson's trial testimony, page 53)   Eventually when sufficient time had passed to avoid any gift tax liability on the "loans," Mrs. Stevens instructed the bank to forgive the amounts totaling approximately $60,000.00.   See, trial exhibit 14.

*11*

With regards to the $172,000.00 mortgage/promissory note, Mrs. Stevens gave Mr. Peterson consistent instructions to take no actions to collect the note and not to commence foreclosure proceedings. (Mr. Peterson's trial testimony, page 49). When the note came due in full at the end of its five year term (trial exhibit 10), Mrs. Stevens again instructed the Bank not to collect the note and not to foreclose. (Mr. Peterson's trial testimony, pages 49-50) After Mr. Peterson retired from the bank in June of 2002, Mr. Tim Madigan took over the responsibilities of managing the various Stevens trusts. (Mr. Madigan's trial testimony, pages 58-59). Mr. Madigan testified that since June of 2002 there has not been a single payment made on the $172,000.00 promissory note. He further testified that during the same period of time there was not a single payment made any of the other "loans" due from Luke Stevens. (Mr. Madigan's trial testimony, page 60). Mr. Madigan further testified that he had received verbal instructions from Mrs. Stevens to "postpone any collections efforts on her behalf," to take no actions to collect the note when it became due and not to foreclose the mortgage. (Mr. Madigan's trial testimony, page 60).

Luke Stevens' bankruptcy petition was admitted as trial exhibit 17. The list of secured creditors (Schedule D) does not list the mortgage held by the Mount Vernon Realty Trust. Instead, the mortgagee is incorrectly listed as the Eastern Savings Bank. Further, despite the testimony of both bank

officers that not a single payment was made on the mortgage loan from May of 1997 until their trial testimony, Mr. Stevens' bankruptcy petition at Schedule *J – Current Expenditures Of Individual Debtor* – shows a monthly mortgage payment of $900.00. If Schedule J were corrected to reflect the fact that Mr. Stevens was not actually making any mortgage payments, Mr. Stevens would have shown approximately $470.00 per month in disposable income. Such disposable income (if truthfully disclosed) might have caused the U.S. Trustee's Office to file a motion to dismiss Mr. Stevens' case for substantial abuse within the meaning of 11 U.S.C. § 707(b).

For his part, Luke Stevens acknowledged that his Schedule J disclosed as a current expenditure a $900.00 monthly mortgage payment.  Mr. Stevens admitted that he did not make regular monthly mortgage payments.  He testified that he had made "some" payments on the mortgage note in the past eight years, but could not provide an exact number of payments made or when they were made.  Mr. Stevens was unable to provide any specific dates for a payment, testifying only that he "might have dropped it off at Joe Ryan's office."  This claim was consistent with the testimony of Attorney Joseph F. Ryan (the father) that Luke Stevens had made one payment that was delivered to his office.  (Joseph F. Ryan's trial testimony, page 82)  Mr. Stevens acknowledged that he could not produce a single cancelled check for any such payment.  (Luke Stevens trial testimony, pages 65-66)  Mr.

*13*

Stevens disavowed responsibility for the contents of his
bankruptcy petition and schedules by claiming that he had never
seen the bankruptcy petition and was not familiar with its
contents. (Luke Stevens, trial testimony, page 64)

On or about September 13, 1999 the Essex Superior Court
approved a real estate attachment on Mr. Steven's residence in
favor of the Appellant in the amount of Sixty Thousand
($60,000.00) Dollars. On or about October 18, 1999 the Judgment
Debtor commenced these Chapter 7 proceedings.

### ISSUES PRESENTED AND
### STANDARD OF REVIEW

1. Did the trial court commit reversible error in failing
to deny the debtor a discharge on the grounds that the debtor
engaged in a scheme commencing on May 27, 1997 and continuing to
the date of his bankruptcy filing to utilize a sham mortgage to
his mother to protect and shield his residence from the claims of
creditors with actual intent to hinder, delay and/or defraud his
creditors?

2. Did the trial court commit reversible error in finding
that debtor's use of the fraudulent and sham mortgage to his
mother to shield his residence from the claims of creditors did
not fall within the scope of 11 U.S.C. § 727(a)(2)(A) because
said scheme and concealment did not occur within one year of the
filing of debtor's bankruptcy petition where there was

*14*

substantial and undisputed evidence presented that said scheme continued to the date of his bankruptcy filing?

3.  Did the trial court commit reversible error in failing to deny the debtor a discharge pursuant to 11 U.S.C. § 727(a)(4) on the grounds that the debtor knowingly and fraudulently made a false oath in his bankruptcy schedules by falsely listing Eastern Savings Bank as a secured creditor holding a mortgage on his residence when in fact the mortgage was held by a Trust whose sole beneficial owner was his mother and by falsely stating in his Schedule J – Current Expenditures of Debtor – that he was making a monthly mortgage payment on the mortgage when in fact no payments were made on said mortgage?

4.  Did the trial court commit reversible error in failing to avoid and set aside the fraudulent mortgage granted to the Mount Vernon Realty Trust pursuant to 11 U.S.C. § 548 on the grounds that the debtor engaged in a scheme commencing on May 27, 1997 and continuing to the date of his bankruptcy filing to utilize a sham mortgage to his mother to protect and shield his residence from the claims of creditors with actual intent to hinder, delay and/or defraud his creditors?

5.  Did the trial court commit reversible error in allowing into evidence over the objection of Plaintiff hearsay testimony as to the intent of Margaret Stevens in engaging in the challenged mortgage transaction with her son, the debtor Luke

*15*

Stevens?  (This issue is withdrawn by Appellant after review of
the trial transcript.)

As set forth above, the Adversary Proceeding before the
Bankruptcy Court was a core proceeding.  Accordingly, the
applicable standard of review for the legal conclusions of the
bankruptcy court is de novo.  *In re LaRoche*, 969 F.2d 1299, 1301
(1st. Cir. 1992)  "In reviewing an appeal from an order of a
bankruptcy court, a district court reviews de novo conclusions of
law and legal significance accorded to facts."  *In re Chestnut
Hill Mortgage Corp.*, 158 B.R. 547, 549 (D.Mass.1993)  However, a
district court must accept the bankruptcy judge's findings of
fact unless a review of the record demonstrates that they are
"clearly erroneous."  *Id.*  See, Fed.R.Bank.P. 8013  Thus the
district court must give "due regard" to the opportunity of the
bankruptcy judge to evaluate the credibility of witnesses.
*Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30
(1st.Cir.1994)  See also, *In re First New England Dental Centers,
Inc.*, Civil Action No. 02-12195-WGY (D.Mass. March 31, 2003), *In
re Boston Regional Medical Center, Inc.*, Civil Action No. 03-
12215-RGS (D.Mass. August 9, 2004) and *In re Cadkey Corp.*,
Bankruptcy Appeal No. 04-40045-NMG (D.Mass. March 31, 2005)

**ARGUMENT**

*16*

**I. This Court should disregard or avoid the alleged mortgage given by Luke Stevens to the Mount Vernon Realty Trust on the grounds that the Trust is a sham device created to shield the Defendant's property from his creditors, and the underlying alleged loan was in fact a gift from the Defendant's mother and no funds were ever loaned by the Mount Vernon Realty Trust.**

"It has been stated that the terms "gift" and "loan" are antithetical; and that to establish that property was a gift is to disprove that it was a loan." Gift Rather Than Loan, 39 POF2d 733, 740.

Since "(w)hether a transaction is a gift or a loan is primarily determined by the intention of the transferor," Gift Rather Than Loan, 39 POF2d 733, 745, it is well to keep in mind the maxim that "(t)here is no surer way to find out what parties meant, than to see what they have done." *Pittsfield & North Adams R.R. v. Boston & Albany R.R.* 260 Mass. 390, 398, 157 N.E. 611 (1927), quoting from *Insurance Co. v. Dutcher*, 95 U.S. 269, 273 (1877).

"(I)n determining whether the exchange of money is either a gift or a loan, the court has considered factors such as an **expectation or agreement regarding repayment** or the **accrual and payment of interest.**" *Grose v. Bow Lanes, Inc.,* 661 N.E.2d 1220, 1225 (Ind.App. 1996) (emphasis added).

"If there was no intention to enforce the note, or if there was no reasonable expectation when given that it would be paid, the transaction was more in the nature of a gift to the son-in-law than a debt. It is true that a note was given which was legally enforceable. But a gift may not be claimed as a deduction for tax purposes by the device of taking a note for the amount of the gift. And this we deem so, even though the note may be legally enforceable, if there is no intent to enforce the note or reason to believe when taken that it cannot be collected."

*W.F. Young, Inc. v. Commissioner of Internal Revenue, 120 F.2d 159, 164* (1st Cir. 1941), quoting *C.B. Hayes v. Commissioner of Internal Revenue*, 17 B.T.A. 86 (1929).

Similarly, a **default** by the obligor followed by **no effort to collect** on the part of the obligee is evidence that the transaction was a gift and not a loan. *S.E.C. v. Better Life Club of America, Inc.,* 995 F.Supp. 167, 184 (D.C. 1998).

Compare and contrast *Silva v. Pereira*, 1 Mass.App.Ct. 368, 370, 298 N.E.2d 701 (1973), wherein an expectation of repayment (however delayed) coupled with **actual payment of interest as it accrued** indicated that the transaction in question was a loan.

A gift cannot be converted into a loan through the mechanism of a sham note and mortgage. See: *Milbauer v. Milbauer*, 54 Conn.App. 304, 733 A.2d 907 (1999) (held: a mortgage to the

*18*

plaintiff's mother was simply an attempt to maximize the appearance of the plaintiff's debt and thus to secure for herself a more favorable property distribution in her divorce action).[5]

Not surprisingly, sham notes and mortgages are often employed to disguise gifts and shield property from creditors. "A sham mortgage ... may also serve the purpose of removing property from the reach of creditors." *Pitti v. Pocono Business Furniture*, 859 A.2d 523, 526 footnote 3 (Pa.Commw. 2004).

Once again, as with the determination of the status of the underlying transaction as gift or loan, the determination of the status of the associated mortgage as genuine or sham is made with reference to all of the associated circumstances, i.e. what the parties have actually done.

In reviewing a suspected sham transaction, a court may examine not only the legal form of the transaction but the surrounding

---

[5] In discussing the mortgage, the trial court noted that "[w]ith respect to the 200 Billings Road property, the court finds that its fair market value is [$120,000], and it is subject to a first mortgage in the amount of [$90,000]. **While there is documentary evidence to support the existence of a debt owed by the plaintiff to her mother in the amount of [$50,000], and a mortgage note and deed affirming this debt,** it is the court's view that the plaintiff's mother forwarded funds to the plaintiff in conjunction with her purchase of this property partly from funds held jointly by the plaintiff and her mother, **and partly as a gift from the plaintiff's mother. The court finds the existence of the note and mortgage from the plaintiff to her mother to be a disingenuous effort to mask this act of generosity on the part of the plaintiff's mother, and duplicity on the part of the plaintiff.**"

circumstances and events as well to ascertain the parties'
intentions in concluding the transaction. *Iscovitz v.
Filderman,* 334 Pa. 585, 6 A.2d 270 (1939) .... Thus a court
may find a transaction to be a sham and unenforceable even
though it complies with relevant legal requirements.

*Pitti v. Pocono Business Furniture*, 859 A.2d 523, 525-526
(Pa.Commw. 2004) (footnote omitted).

A sampling of cases will illustrate the application of the
foregoing principles.

In *Pitti v. Pocono Business Furniture, supra,* the Court
found that the following circumstances compelled the conclusion
that the mortgages in question were shams:

Pitti points out that Appellees **never received any payments on
the mortgages** and never sought to maintain or insure the
property.

*Id.*, at 525 (emphasis added).

The mortgages were recorded on the very day that the property
was exposed to upset tax sale, the timing of which suggests a
conclusion too obvious to state. There is no evidence in the
record that the property is of sufficient value to secure the
mortgages. **Vonson and Jennings received no payments on the
mortgages, nor could there be any expectation of receiving**

---

*Milbauer v. Milbauer*, 54 Conn.App. 304, 318-319, 733 A.2d 907

**such payments** because Pocono Business ceased operations sometime shortly after the warehouse roof collapse in January 1994. Prior to this litigation, **Appellees took few, if any, actions consistent with those of a mortgagee to protect his or her interest in a property**: Appellees paid no real estate taxes; the property was allowed to deteriorate into a dilapidated state; the property insurance was allowed to lapse; and Appellees evidently made no attempt to sell the property or to otherwise address the tax delinquencies.

*Id.*, at 526-527 (emphasis added).

In *United States v. Klimek*, 952 F.Supp. 1100 (E.D.Pa. 1997), the Court set aside a sham mortgage after finding that it was designed solely to avoid federal tax liens. In that case Klimek, **under investigation for tax fraud, bought a residence in the name of one corporation and then took out a large mortgage on the property from a second corporation.** The court noted that **Klimek created both corporations; Klimek was the president of both corporations; neither corporation conducted significant business; and no payments were ever made on the mortgage.** The Court, therefore, concluded that the corporations were merely Klimek's alter egos and that the transactions were devoid of economic substance.

---

(1999) (emphasis added).

In *Citizens Bank of Elizabethton, Tennessee v. Ken-Penn Amusement, Inc.*, 798 F.Supp. 268 (W.D.Pa. 1992), the Court set aside the sheriff's sale of certain property because, although the transactions resulting in a confessed judgment were properly executed, **the loans that were the basis of the judgment were part of a scheme to shield the assets from creditors**. In reaching this conclusion, the Court noted that **the two corporations involved in the transactions were owned and controlled by the same family; that the judgment creditor, also a family member and by all indications a person of modest means, could not explain how she obtained some $300,000 in purported loan money; that no interest was charged on the loans and no repayment due date existed; and that the judgment creditor did not investigate whether the debtor corporation could actually repay the loans. The court also noted that the creditor waited six years before executing her confessed judgment**, scheduling the sheriff's sale three weeks before a legitimate creditor went to trial and obtained a $300,000 judgment against the corporation. The Court concluded that "(c)onsidering the totality of circumstances in this case, the court believes that no reasonable jury could find the timing of Sanders' (judgment creditor] actions merely coincidental." *Id.* at 273.

Now, then: consider the transaction at bar in the light of the foregoing authorities:

**Item:** At the time that the Defendant gave the mortgage to the Mount Vernon Realty Trust, he was certainly under threat of impending litigation for having defaulted on his contract with the Plaintiff.

**Item:** The mortgage effected a transfer of rights in substantially all of the Defendant's property. According to the Defendant's Chapter 7 Petition, Schedule A, the 3 Crescent Court property is the only real estate he owns, and according to Schedule B his only other property consists of miscellaneous personalty valued at slightly more than Twelve Thousand ($12,000.00) Dollars.

**Item:** As a result of this transfer, by the Defendant's own admission, he was without assets with which to satisfy his outstanding indebtedness.

**Item:** The Defendant retained possession of the property.

**Item:** There was certainly a special relationship between the debtor and the creditor. To recap briefly:

-- the transferee, Mount Vernon Realty Trust, was a trust whose only beneficiary was the Defendant's mother's trust, the Margaret E. Stevens Trust. The only (present) beneficiary of this latter trust was the defendant's mother, Margaret E. Stevens.

-- the source of the funds for which the mortgage was allegedly given was the Margaret E. Stevens Trust, and the disbursement of the funds was ordered by Margaret E. Stevens -- who had ordered

*23*

many, similar disbursements to the Defendant in the recent past (and who subsequently forgave any repayment on most of those disbursements).

-- the attorney who represented the mother for more than twenty years and disbursed her monies to the Defendant at her request; the attorney who drafted the Mount Vernon Realty Trust and arranged the whole financial transaction for the benefit of the Defendant-Mortgagor; and the attorney who represented the Bank-lender (in its capacity as Trustee of the Margaret E. Stevens Trust) at the closing ... **were all one and the same attorney: Joseph F. Ryan, Esq.!** This state of affairs would surely constitute a monstrous conflict-of-interest for the attorney ... unless the transaction was an **exceptionally friendly** one, among some **very close** parties.

**Item:** The Mount Vernon Realty Trust was created for the sole purpose of receiving the Defendant's note and mortgage, and never held any other assets, and never performed any other function.

**Item:** The Mount Vernon Realty Trust -- the alleged mortgagee -- **never even performed the function for which it was created.** It gave no monies or other consideration in exchange for the mortgage and note. The Mount Vernon Realty Trust never had a bank account or taxpayer identification number. It's Trustee never took any actions on its behalf.

*24*

**Item:** The putative Trustee never took any action consistent with a belief that the Mount Vernon Realty Trust was a genuine legal entity for whose proper administration he was legally responsible.

**Item:** The Mount Vernon Realty Trust -- the alleged mortgagee -- never took any legal or other action to protect its interest in the note and mortgage once the Defendant defaulted (which he did on day one and continuously thereafter).

**Item:** The actual lender of the monies in question, the Eastern Bank, as Trustee of the Margaret E. Stevens Trust, never took any legal or other action to protect its interest in the note and mortgage once the Defendant defaulted.

**Item:** The ultimate authority for the disbursements of the monies in question, Margaret E. Stevens, never took any legal or other action to protect her interest in the note and mortgage once the Defendant defaulted. **Indeed to the contrary: she pointedly instructed her trustee, Eastern Bank, both orally and in writing, not to take any action to collect against the Defendant.**

**Item:** From the day of giving the note and mortgage, May 28, 1997, to date, the Defendant has **never** made any payments of principle or interest on the alleged debt.

**Item:** Given that the note was due in full as of May 28, 2002, and that the Defendant has defaulted on his payment obligations thereunder from day one, it is manifest that there was **never** any reasonable expectation of repayment by the Defendant.

**Item:** The defendant's mother and financial angel, Margaret E. Stevens, has established a track record of "loaning" monies to her son, the Defendant, and then forgiving the "loans." Concerning which see: *Millett v. Temple,* 280 Mass. 543, 548-549, 551-552 (1932), holding that forgiveness of a loan constitutes a gift. Finally, and in addition to all of the foregoing, we have attorney John M. Ryan's (the only Trustee for the Mount Vernon Realty Trust) representation to this Court that "It was always the intention of Mr. Stevens' mother that if he was unable to pay the mortgage note that it would be credited against his share of her estate."[6] If so, then the so-called loan was in fact an advancement against a legacy -- which is a **gift.**

"A donor may express in the gift that the gift is an advancement." *In Re Estate of Soule*, 248 Neb. 878, 886, 540 N.W.2d 118 (1995).

Massachusetts law recognizes advancements. See: Mass.Gen.L. c. 196, sec. 5 (advancements against intestate shares); Mass.Gen.L. c. 197, sec. 25A (advancements against testate

---

[6] Joint Pretrial Memorandum at paragraph 8 (emphasis added).

shares); *New England Merchants National Bank v. Morin,* 16 Mass.App.Ct. 104, 108, 449 N.E.2d 682 (1983).

Withal, the Plaintiff submits that there is really very little room for doubt on this matter: the alleged loan to the Defendant was in fact a gift and the accompanying note and mortgage were but sham devices created to shield the Defendant's newly-acquired property from his creditors, specifically including the Plaintiff.

**II. This Court should disregard or avoid the alleged mortgage given by the Defendant to the Mount Vernon Realty Trust on the grounds that the mortgage is a fraudulent conveyance.**

Under the Massachusetts Uniform Fraudulent Transfer Act, Mass.Gen.L. c. 109A, sec. 5(a)(1), a mortgage is fraudulent as to a creditor, and thus avoidable, if it is made "with actual intent to hinder, delay, or defraud any creditor of the debtor." *Hasbro, Inc. v. Serafino,* 37 F.Supp.2d 94, 97-98 (D.Mass. 1999).

"Actual intent" is commonly shown through circumstantial evidence and inference. See *Palmer v. Murphy*, 42 Mass. App. Ct. 334, 345, 677 N.E.2d 247 (1997). Generally, typical indicia of fraudulent intent include:

(1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special

relationship between the debtor and the transferee; (5) retention by the debtor of the property involved in the putative transfer.

*Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir. 1991) (citations omitted); see also *Palmer v. Murphy,* 42 Mass. App. Ct. at 345, 677 N.E.2d 247. While the "presence of a single badge of fraud may spur mere suspicion, the confluence of several can constitute conclusive evidence of an actual intent to defraud." Id. at 254-55 (citation omitted).

*Hasbro, Inc. v. Serafino, supra,* at 98.

The test thus outlined for determining actual intent to defraud fits the present fact pattern like the proverbial glove:

**Item:** At the time that the Defendant gave the mortgage to the Mount Vernon Realty Trust, he was certainly under threat of impending litigation for having defaulted on his contract with the Plaintiff.

**Item:** The mortgage effected a transfer of rights in substantially all of the Defendant's property. According to the Defendant's Chapter 7 Petition, Schedule A, the 3 Crescent Court property is the only real estate he owns, and according to Schedule B his only other property consists of miscellaneous personalty valued at slightly more than Twelve Thousand ($12,000.00) Dollars.

**Item:** As a result of this transfer, by the Defendant's own admission, he was without assets with which to satisfy his outstanding indebtedness.

**Item:** The Defendant retained possession of the property.

**Item:** Last but certainly not least in this case, there was certainly a very special relationship between the debtor and the transferee.

These and other indicia of fraud are discussed at greater length in part I of this Argument, *supra*.

Withal, the facts at bar prove that the putative mortgage was nothing more than a device to shelter the Defendant's real estate, with actual intent to hinder, delay, or defraud his creditors, specifically including the Plaintiff.[7]

### CONCLUSION

---

[7] Compare the facts at bar with those in *Hasbro, supra,* upon which the Court set aside a mortgage given in fraud of creditors:

> At the time of the transfer, George Serafino was being sued by Hasbro; he attempted to transfer a substantial portion of his attached property to Richard, Jean, and Anthony Serafino; he had no source of income and faced considerable debt, and he was in a special relationship with the transferee ù father and son. Furthermore, the timing of the transfer to Anthony Serafino was suspicious; the mortgage was granted on December 16, 1996, just four days after the attachment hearing in front of Magistrate Judge Neiman. At the hearing, no mention was made of George Serafino's intent to grant mortgages on the property to be attached.

*Id.*, at 98.

**I.** This Court should disregard or set aside the alleged mortgage given by the Defendant to the Mount Vernon Realty Trust on the grounds that the Trust is a sham device created to shield the Defendant's property from his creditors, and the underlying alleged loan was in fact a gift from the Defendant's mother.

**II.** This Court should disregard or set aside the alleged mortgage given by the Defendant to the Mount Vernon Realty Trust on the grounds that the mortgage is a fraudulent conveyance.

**III.** This Court should enter an Order denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) on the grounds the debtor knowingly and fraudulently made false oaths by falsely listing Eastern Savings Bank as a secured creditor and failing to disclose the mortgage granted in favor of his mother's trust and by falsely claiming to currently expend $900.00 per month on mortgage payments when in fact no such payments were ever made.

WHEREFORE the Plaintiff prays for entry of a Judgment setting aside and avoiding the alleged mortgage, denying the Debtor's discharge on the grounds of Debtor's false statement in his schedules that he was making mortgage payments to the mortgagee, making the Debtor's property available to satisfy the Plaintiff's State Court Judgment, awarding the Plaintiff his costs of this action, and awarding the Plaintiff such other and further relief as may be appropriate.

Respectfully submitted,

WILLIAM J. LUNDREGAN,
Executor of the Estate
of Thomas A. Smith,
By His Attorney,

/s/ William H. Harris
William H. Harris, Esq.
BBO # 560813
WILLIAM H. HARRIS, P.C.
86 Dodge Street
Beverly, MA 01915
Tel: 978.921.2929

## CERTIFICATE OF SERVICE

I, William H. Harris, hereby certify that on August 10, 2005
I served this pleading by electronic filing and service and as to
non-ECF participants only also mailed, postage prepaid, copies of
the foregoing pleading to: Gary W. Cruickshank, Esq., 21 Custom
House Street, Boston, MA 02110; and to Luke Stevens, 3 Crescent
Court, Beverly, MA 01915.

/s/ William H. Harris
William H. Harris, Esq.