United States District Court
District of Massachusetts

```
                                    )
In re Luke Stevens,                 )
                                    )
        Debtor,                     )
                                    )
WILLIAM J. LUNDREGAN, Executor      )
of the Estate of Thomas A.          )
Smith,                              )      Bankruptcy Appeal No.
                                    )      05-11557-NMG
        Appellant,                  )
                                    )
        v.                          )
                                    )
LUKE STEVENS and JOSEPH M. RYAN,    )
Trustee of the Mount Vernon         )
Realty Trust,                       )
                                    )
        Appellees.                  )
                                    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In the instant dispute, the appellant, William J. Lundregan ("Lundregan"), executor of the estate of Thomas A. Smith, appeals the judgment of the Bankruptcy Court, pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8001, denying his complaint to avoid a fraudulent conveyance in favor of Joseph M. Ryan ("Ryan, Jr."), trustee of the Mount Vernon Realty Trust ("the Mount Vernon Trust"). The Court also overruled Lundregan's objections to a discharge granted to the debtor, Luke Stevens ("Mr. Stevens"), from which denial he also appeals. Having reviewed the memoranda in support of and opposition to the present appeal, the Court resolves the case as follows.

-1-

I.  **Background**

   A.  **Facts**

On May, 19, 1997, the Mount Vernon Trust was formed with the assistance of Attorney Joseph F. Ryan ("Ryan, Sr.").[1] His son, Ryan, Jr., was named the trustee and the Margaret E. Stevens Trust 1981 ("the Stevens Trust 1981") was designated as the sole beneficiary. The Stevens Trust 1981 is a revocable trust established by Margaret Stevens ("Mrs. Stevens") and she is the sole life beneficiary of that trust. The Stevens Trust 1981 has been characterized as a "nominee trust", meaning that Mrs. Stevens controls all actions undertaken by her trustee, Ryan, Jr.

On May 27, 1997, Mrs. Stevens gave written instructions to the Trustee of the Stevens Trust 1981, Eastern Savings Bank ("Eastern"), to advance monies to her son, Mr. Stevens, for his purchase of a house. Mr. Stevens had previously lived with his mother but he was in need a new home because his mother was planning to sell her home and relocate to Florida.

The following day, Mr. Stevens purchased real estate at 3 Crescent Court, Beverly, Massachusetts, for $170,000. At the closing, he executed a promissory note in the amount of $172,000 in favor of Ryan, Jr., trustee of the Mount Vernon Trust. The

---

[1] Factual background relating to this appeal is adopted, in part, from the Findings of Fact and Rulings of Law of the Bankruptcy Court in this matter.

note was to mature in five years, bore an interest rate of 4.75%, provided for monthly mortgage payments of $897.65 and required a balloon payment on the maturity date in May, 2002. Mr. Stevens secured the note to the trustee with a mortgage on the Crescent Court property.

In June, 1997, Lundregan sued Mr. Stevens for specific performance of an aborted real estate purchase. He alleged that Mr. Stevens signed an offer and deposited $1,000 to bind a purchase of two parcels of rental property in Salem, Massachusetts for $245,000 from the estate of Thomas A. Smith, of which Lundregan is (and was) the executor. Mr. Stevens reneged on the purchase and Lundregan subsequently sold the properties to another buyer for $210,000, at a loss of $35,000.

In March, 1998, Mrs. Stevens instructed Eastern, as the trustee of the Stevens Trust 1981, not to collect on her son's promissory note to her. In October, 1998, Mrs. Stevens gave further instruction to Eastern, as trustee of the Stevens Trust 1981, to forgive $60,000 in various debts that Mr. Stevens owed her. Among the loans she did not forgive, however, was the $172,000 mortgage loan on the Crescent Court property and two other loans in the amounts of $48,000 and $15,000, respectively. Mrs. Stevens acknowledged in her written communication to Eastern that there might be gift tax consequences with respect to the forgiveness of those loans.

In March, 1999, Lundregan was awarded summary judgment against Mr. Stevens in his action for specific performance in Massachusetts Superior Court. In August of that year, Lundregan sought to attach Mr. Stevens's real estate, and his motion to that effect was granted shortly thereafter. In October, 1999, more than two years after Mr. Stevens acquired the Crescent Court property and mortgaged it, he filed a bankruptcy petition under Chapter 7.

**B.   Issues**

Lundregan's adversary proceeding filed in the Bankruptcy Court presented four separate counts for discharge denial, lien avoidance, fraud and constructive fraud.

In Count I, Lundregan sought, under 11 U.S.C. § 727(a)(2)(A), to deny Mr. Stevens a discharge on the grounds that within one year of bankruptcy Mr. Stevens executed a sham mortgage to the Mount Vernon Trust on his real estate intended to defraud his creditors. In Count II, Lundregan sought to deny a discharge to Mr. Stevens under 11 U.S.C. § 727(a)(4)(A). He alleged that Mr. Stevens made a false oath with respect to two schedules that were submitted as part of the Chapter 7 bankruptcy proceedings. Specifically, Lundregan alleged that Mr. Stevens knowingly and fraudulently 1) listed Eastern as a secured creditor holding a mortgage on his residence in the amount of $170,000 and 2) affirmed that he was making monthly mortgage

payments in the amount of $900 per month.

In Count III, Lundregan sought to have the mortgage obligation in favor of Ryan, Jr., as trustee of the Mount Vernon Trust, declared null and void because it constituted a fraudulent transfer of property of the bankruptcy estate. Finally, in Count IV, Lundregan alleged actual and constructive fraud under §§ 548(a)(1)(A) and 548(a)(1)(B), respectively.

### C. Bankruptcy Court's Findings of Fact and Rulings of Law

On June 2, 2005, Bankruptcy Judge Robert Somma entered findings of fact and rulings of law with respect to the hearing on May 11, 2005, on Lundregan's default motion. Judge Somma dismissed Lundregan's objections to the discharge on their merits and ruled that he would take nothing as against Ryan, Jr., as trustee of the Mount Vernon Trust.

## II. Discussion

### A. Standard of Review

In reviewing an appeal from an order of a bankruptcy court, a district court reviews de novo "[c]onclusions of law and legal significance accorded to facts". In re Chestnut Hill Mortgage Corp., 158 B.R. 547, 549 (D. Mass. 1993). However, a district court must accept the bankruptcy judge's findings of fact unless a review of the record demonstrates that they are "clearly erroneous." Id.

-5-

**B.   Analysis**

   **1.   Actual and Constructive Fraud**

The first and principal problem that the appellant, Lundregan, confronts in his appeal from the bankruptcy court's order concerns timing. With respect to Lundregan's claims of actual and constructive fraud under §§ 548(a)(1)(A) and 548(a)(1)(B), respectively, the statute in question states explicitly:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred <u>on or within one year before the date of the filing of the [bankruptcy] petition</u>....

11 U.S.C. § 548(a)(1)(2004)(emphasis added).[2] In this matter, the transfer that Lundregan desires to set aside is the mortgage Mr. Stevens granted to the Mount Vernon Trust in May, 1997, to secure the promissory note on his purchase of the Crescent Court property. Thus, the transfer in question occurred more than two years before Mr. Stevens filed for bankruptcy.

Although Bankruptcy Judge Somma could have ended his analysis at that point, he nevertheless reviewed Lundregan's argument on its merits and found it similarly lacking. Specifically, Lundregan's over-arching contention with respect to

---

   [2] Section 548(a)(1) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8. The Act amended the section by striking out "one year" and inserting "2 years" but the amendments were not retroactive and have no bearing on this particular case.

most of his claims on appeal is that the mortgage that was granted by Mr. Stevens to secure money loaned to him by his mother through the Mount Vernon Trust, was a sham device created to shield Mr. Stevens's property from his creditors.  Lundregan argues that the money transferred to Mr. Stevens by the Mount Vernon Trust was not a loan but rather a gift from his mother.

To that end, Lundregan's brief makes a colorable argument that 1) the Mount Vernon Trust was created for the sole purpose of receiving Mr. Stevens's note and mortgage and never held any other assets or performed any other function, 2) the Mount Vernon Trust, Eastern and Mrs. Stevens took no legal or other action to protect their interest in the promissory note and mortgage once Mr. Stevens defaulted, 3) Mr. Stevens rarely, if ever, made any payments of principle or interest on the alleged debt, 4) there was never any reasonable expectation of repayment by Mr. Stevens on the note and 5) the loan to Mr. Stevens was, in fact, an advance against a legacy (a/k/a a gift) by Mrs. Stevens to her son.

The fundamental difficulty with Lundregan's argument on this appeal is, however, that his objections are primarily with the bankruptcy judge's findings of fact which this Court will disturb only if a review of the record demonstrates that they are "clearly erroneous".  For example, Bankruptcy Judge Somma stated, with respect to Lundregan's contentions:

> The witness testimony [sic] in all respects was creditable and I observe and find that there were no contradictions on any material fact at issue. Margaret Stevens's intent, as reflected in the letters she sent to her Trustee, and in the actions of her Trustee and Ryan, Sr., at her direction, was to advance funds to the debtor [Mr. Stevens] as a loan and to secure that loan, and ultimately collect on it....
>
> I specifically find that she did not intend and did not treat the advance of funds to her son through the Mount Vernon Realty Trust as a gift, but rather, again, reflected an intention to maintain and ultimately collect on that note and mortgage.

This Court, having reviewed the testimony and evidence presented to the bankruptcy judge, concludes that, although they might have been subject to a different interpretation, there is nothing "clearly erroneous" about the findings of fact based on that evidence.

For instance, Mrs. Stevens's attorney, Ryan, Sr., testified under oath that the money given to Mr. Stevens by his mother for the purpose of purchasing the Crescent Court property was not intended to be a gift. When he was asked to explain, he replied, "She told me it was a loan." Ryan, Sr. testified further that, although he was given instruction by Mrs. Stevens not to enforce collection of her son's outstanding obligation, her stated reason was "[b]ecause they're her children and she didn't want to hurt them." Ryan, Sr., testified that it was, nevertheless, always his impression that Mrs. Stevens had no intention of forgiving the loan to her son.

That testimony was corroborated by the trial testimony of

Gary Peterson ("Mr. Peterson"), the retired trust officer at Eastern, who stated that Mrs. Stevens intended the money given to her son from the Stevens Trust 1981 to be a loan to permit him to purchase the Crescent Court property. In fact, Trial Exhibit 14, a letter from Mrs. Stevens to Mr. Peterson dated October 28, 1998, describes various promissory notes from her son, totaling $60,000, that Mrs. Stevens wanted to forgive. Notably absent from that list is the $172,000 note.

Moreover, Lundregan's contrary interpretation of the financial dealings between Mr. Stevens and his mother does not comport with common sense. Bankruptcy Judge Somma observed that if Mr. Stevens and his mother actually intended to engage in a fraud with respect to Mr. Stevens's creditors:

> [T]hey could have avoided altogether any allegation of fraud in the effectuation of [Mrs. Stevens's] wishes to provide [Mr. Stevens] with a home by simply purchasing a house in her own name and permitting him to live in it rent free, or other forms of transaction.

If Mr. Stevens and his mother were truly committed to defrauding his creditors, as Lundregan alleges, they had more subtle and less complicated means at their disposal.

### 2. Denial of Discharge

Lundregan's denial of discharge claim brought under § 727(a)(2)(A) has timing problems similar to those mentioned with respect to the fraudulent conveyance claims. The relevant statutory language states:

The court shall grant the debtor a discharge, unless–

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>
> (A) property of the debtor, <u>within one year before the date of the filing of the petition</u>

11 U.S.C. § 727(a)(2)(A)(2004)(emphasis added). The problem with Lundregan's claim for denial of discharge under this statute is that the transfer in question occurred outside of the statutory one-year period. Moreover, even if this Court were to address his claim on its merits, that claim would fail by virtue of the bankruptcy judge's finding that the mortgage granted by Mrs. Stevens to her son was not a sham.

### 3. False Oaths

Lundregan's claims with respect to § 727(a)(4)(A) present a more difficult question. The statute states, in relevant part: "The court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A)(2004). Here, Lundregan alleges that Mr. Stevens knowingly and fraudulently made a false oath by certifying that two schedules submitted in his Chapter 7 proceedings were true and correct when, in reality, one (Schedule D) falsely listed Eastern as a secured creditor holding a mortgage on his residence in the

amount of $170,000 and the other (Schedule J) falsely stated that Mr. Stevens was making mortgage payments in the amount of $900 per month.

With respect to Schedule D, Bankruptcy Judge Somma found that, although the schedule lists the incorrect name of the mortgagee holding a lien on the property, there is no material misrepresentation because the current mortgagee's identity is readily ascertainable from the facts set forth in the schedule and thus there was no intention to conceal the ownership of the property or the fact that it was subject to a lien. With respect to Schedule J, the judge found that, although the schedule is correct, it creates the mis-impression that Mr. Stevens, despite having a monthly mortgage obligation of $900, made more than one or two such payments.

The bankruptcy judge found that those facts "reflect both a lack of attention to detail on the debtor's part and a more casual attitude towards disclosure duties than is ideal". Nevertheless, he concluded that no one could have been misled by those mistaken entries 1) that there was a mortgage on the Crescent Court property or 2) that Mr. Stevens had a $900 monthly obligation (which he was not fulfilling).

There is no question that appellant's claim with respect to § 727(a)(4)(A) is, in the words of the bankruptcy judge, "more problematical from the debtor's point of view" than the other

claims. The appellees do not deny that incorrect information was submitted in both Schedules D and J even though, as the bankruptcy court emphasized, no one could have been misled by Mr. Stevens's mistakes. That is not, however, the standard required by the statute which states clearly that the "court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." There is no exception for a false statement that did not mislead anyone.

The bankruptcy court's finding that the evidence did not prove that Mr. Stevens made those false oaths "knowingly and fraudulently" is more compelling. The evidence presented to the Bankruptcy Court with respect to Schedule D supports the judge's finding that "there is no intention to conceal the ownership of the property, or the fact that it was subject to a lien". The limited evidence that was presented on that issue uniformly indicated that the mistake on Schedule D, namely listing Eastern as the secured creditor holding a mortgage on his Crescent Court residence in the amount of $170,000 rather than the Mount Vernon Trust, was attributable to slipshod reporting rather than to intentional fraud.

The mistakes listed on Schedule J are more serious because in that schedule Mr. Stevens falsely stated that he was making mortgage payments in the amount of $900 per month. The trial

testimony of various witnesses, including Mr. Stevens, indicated that he did not fulfill his monthly obligation and, in fact, probably made no more than one or two mortgage payments. That information was wrongfully withheld from the Chapter 7 schedules, thus creating a false impression.

Notwithstanding the misinformation in Schedule J, the appellant has failed to prove that the mistaken entries were "knowingly and fraudulently" made by Mr. Stevens. In the absence of evidence to the contrary, this Court will not reverse the Bankruptcy Court's ruling.

## ORDER

In accordance with the foregoing, the Judgment of the Bankruptcy Court (Case No. 99-18437-CJK) is **AFFIRMED**. This Bankruptcy Appeal is **DISMISSED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 27, 2006